# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **KEVIN ROLLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-12-S-3313-NE** |
| | ) | |
| **DOROTHY HOUSTON,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Dr. Kevin Rolle, asserts claims for violations of the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1961 *et seq.* ("RICO") (Count I), as well as state-law claims of defamation, negligence, wantonness/recklessness, invasion of privacy/false light, and common law civil conspiracy (Counts II through VI).[1]  The six-count complaint names five individuals as defendants:  *i.e.*, Kevin Matthews; James Montgomery; Tony Smith; Dorothy Houston; and Tom Bell.[2]  The gravamen of plaintiff's complaint is that those defendants conspired "to systematically destroy the personal and professional reputation of [plaintiff] by distributing documents which they knew, or should have known, were false as the result of an intentional alteration."[3]

---

[1] *See* doc. no. 3 (Amended Complaint).

[2] *See id.* ¶¶ 3–7.

[3] *Id.* ¶ 1 (alteration supplied).

Between October 19, 2012, and January 25, 2013, each defendant filed a responsive motion to plaintiff's Amended Complaint. Thereafter, on July 19, 2013, the court entered a Memorandum Opinion and Order holding that

> defendant James Montgomery's motion to dismiss the claims against him is GRANTED. All claims asserted by plaintiff against James Montgomery are DISMISSED with prejudice. Defendant Tom Bell's motion for a more definite statement of Count I is also GRANTED. Plaintiff is ORDERED to file, on or before July 26, 2013, a more definite statement of that Count in the form of a RICO case statement, as stated above.
>
> Defendant Kevin Matthews's motion to dismiss is DENIED. Defendant Dorothy Houston's motion to dismiss Count I is DENIED as moot. Defendant Tony Smith's motion to dismiss is DENIED as to Counts II through VI, and DENIED as moot as to Count I. The motion for a protective order filed jointly by defendants James Montgomery and Tom Bell is DENIED as moot.[4]

Plaintiff filed a revised RICO case statement on July 26, 2013,[5] alleging that "[t]he Defendants and other, unknown individuals acted as an enterprise and engaged in a campaign, primarily through electronic mail, to spread false information about the Plaintiff in an attempt to have his employment terminated for their own financial benefit."[6] Plaintiff further alleged that such actions: "constitute violations of wire

---

[4] Doc. no. 52 (Memorandum Opinion and Order), at 25 (footnotes omitted).

[5] Doc. no. 53 (Plaintiff's RICO Case Statement).

[6] *Id.* at ECF 4–5. "ECF" is the acronym for "Electronic Case Filing," a system that allows parties to file and serve documents electronically. *See Atterbury v. Foulk*, No. C-07-6256 MHP, 2009 WL 4723547, *6 n.6 (N.D. Cal. Dec. 8, 2009). Bluebook Rule 7.1.4 *permits* citations to the "page numbers generated by the ECF header." *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 257 n.5

fraud under 18 U.S.C. § 1343"; "form the pattern of racketeering and are the basis of Kevin Matthews'[s,] Tony Smith's, Dorothy Huston's [*sic*] and Tom Bell's violation of 18 U.S.C. § 1962(c)"; and "constitute the primary overt acts taken in furtherance of the conspiracies under 18 U.S.C. § 1962(d)."[7]

The remaining parties to the case subsequently filed additional motions that are now before the court. Defendants Bell, Houston, Smith, and Matthews have each filed separate motions to dismiss Count I of plaintiff's complaint — *i.e.*, plaintiff's revised RICO case statement — for failing to state a claim upon which relief can be granted.[8] Defendant Bell and former defendant James Montgomery have also filed a joint motion to compel the deposition of plaintiff.[9] Finally, plaintiff has filed a

---

(D.D.C. 2011) (citing *The Bluebook: A Uniform System of Citation* R. B. 7.1.4, at 21 (Columbia Law Review Ass'n *et al.*, 19th ed. 2010)). Even so, the Bluebook recommends "against citation to ECF pagination in lieu of original pagination." *Wilson*, 772 F. Supp. 2d at 257 n.5. Thus, unless stated otherwise, this court will cite the original pagination in the parties' pleadings. When the court cites to pagination generated by the ECF header, it will, as here, precede the page number with the letters "ECF."

    [7] Doc. no. 53 (Plaintiff's RICO Case Statement), at ECF 4 (alterations supplied).

    [8] Doc. no. 54 ("Defendant, Tom Bell's, Motion to Dismiss"); doc. no. 59 ("Motion to Dismiss" filed by Dorothy Houston); doc. no. 61 ("Defendant, Tony Smith's, Motion to Dismiss"); doc. no. 67 ("Defendant, Kevin Matthews'. [*sic*] Motion to Dismiss"). All defendants also assert that the entirety of plaintiff's complaint should be dismissed, but only defendants Houston and Smith provide an argument as to why: *i.e.*, if the court dismisses plaintiff's RICO claim, "the Court will no longer have subject-matter jurisdiction over the state claims." Doc. no. 61 (Motion to Dismiss filed by Tony Smith), at 1; *see also* doc. no. 59 (Motion to Dismiss filed by Dorothy Houston), at 2 n.1 ("Should this Court find that the RICO claim is due to be dismissed for failure to state a claim, the entire Complaint should be dismissed for lack of subject matter jurisdiction."). That argument will be addressed in Part III.C, *infra*.

    [9] Doc. no. 68.

"Motion to Alter or Amend" the court's order dismissing defendant James Montgomery, as well as a motion to strike an exhibit attached to defendant Houston's motion to dismiss.[10]

Upon consideration of the motions, briefs, and legal authorities, this court concludes that all defendants' motions to dismiss are due to be granted. Plaintiff's "Motion to Alter or Amend" is due to be denied. Defendants Bell and Montgomery's joint motion to compel and plaintiff's motion to strike are due to be denied as moot.

## I. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." That rule must be read in conjunction with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that

---

[10] Doc. no. 62 (Motion to Alter or Amend); doc. no. 63 (Response to the Second Motion to Dismiss Filed by Dorothy Huston [*sic*] and Motion to Strike Exhibit A to the Motion).

is plausible on its face." [*Twombly*, 550 U.S.] at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Iqbal*, 556 U.S. at 678 (alteration supplied). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). But when "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## II. FACTS AS ALLEGED

As always is the case in the context of ruling upon a motion to dismiss, the district court is required to assume that

the facts set forth in the plaintiff's complaint are true. *See Anza* [*v. Ideal Steel Supply Corp.*], 547 U.S. 451, [453 (2006)] (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual allegations (with reasonable inferences drawn favorably to Plaintiffs) in the complaint as true").

5

> Because we must accept the allegations of plaintiff's complaint as true, what we set out in this opinion as "the facts" for Rule 12(b)(6) purposes may not be the actual facts.

*Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006) (alterations supplied).

## A.     The Parties

Plaintiff, Kevin Rolle, is the Executive Vice President of Alabama A&M University ("the University").[11]

All defendants are now — or have at various times in the past been — affiliated with the University in some capacity.  For example, defendant Kevin Matthews is a compliance officer with the University's Research Institute.[12]  The Institute assists the University in obtaining research contracts.[13]  Defendant Dorothy Houston is a former professor and vice president at the University, and owns Technical Management Training Group, Inc.[14]  That company receives contracts from the University's Research Institute.[15]  Defendant Tom Bell is a former member of the Board of Trustees, and a current member of the Board of Directors of the Research Institute.[16]

---

[11] Doc. no. 3 (Amended Complaint) ¶ 16.

[12] *Id.* ¶ 17.

[13] *Id.*

[14] *Id.* ¶ 20.

[15] *Id.*

[16] Doc. no. 3 (Amended Complaint) ¶ 21.

Defendant Tony Smith is an "active participant" in the University's Alumni Association.[17]

## B.    Plaintiff's Underlying Conviction and the Subsequent Clerical Error

Plaintiff pled guilty in the United States District Court for the Middle District of Georgia on December 12, 2008 to the offense of "Less Than Safe Driving — Alcohol Use," a crime that occurred while he was operating a motor vehicle on a United States military installation.[18]   A clerical error caused the record of the conviction to incorrectly reflect that plaintiff had pled guilty to driving under the influence of marijuana.[19]   That error was subsequently corrected, but the notation of the clerk's error only appeared on a single page of court records.[20]

## C.    The "Altered" Conviction Records

One or more of the defendants created a group e-mail account in the Fall of 2010 for the purpose of sharing "information among themselves and disseminat[ing] false and/or misleading information without fear of reprisal."[21]   Defendant Matthews obtained a copy of plaintiff's 2008 guilty plea and distributed the records to the other

---

[17] *Id.* ¶ 19.

[18] *Id.* ¶ 24.

[19] *Id.* ¶ 25.

[20] *Id.* ¶ 26.

[21] *Id.* ¶ 23 (alteration supplied).

7

defendants through his personal email account.[22]   The distributed records were "altered" by omitting the notation correcting the initial clerical error.[23]   Thus, the altered records reflected only the original error that plaintiff pled guilty to driving under the influence of marijuana.[24]   Plaintiff alleges that defendants knew that the records were altered,[25] and that they conspired to promulgate the erroneous information in order to damage plaintiff's reputation and employment.[26]

Subsequently, defendants Matthews, Houston, and Smith further disseminated the altered records via e-mail to "numerous individuals," including Alabama State Representative Mike Ball and Alabama Governor Robert Bentley.[27]   They also sent the records to the Mayor of Huntsville, the University's Alumni Association, and members of the Madison County Commission, the Huntsville City Council, and the North Alabama Legislative delegation.[28]

Defendant Bell sent a memorandum to Velma Tribute, the Secretary of the Alabama A&M Board of Trustees, on June 4, 2011, "requesting an opportunity to

---

[22] Doc. no. 53 (Plaintiff's RICO Case Statement), at ECF 5–6.

[23] *Id.*

[24] *Id.* at ECF 6.

[25] Doc no. 3 (Amended Complaint) ¶ 30.

[26] *Id.* ¶¶ 40, 68.

[27] Doc. no. 53 (Plaintiff's RICO Case Statement), at ECF 6–7.

[28] Doc. no. 3 (Amended Complaint) ¶ 31.

present to the board an issue as to the character of one of our VP'S [*sic*] concerning a DUI and driving under the influence of marijuana in Georgia . . . ."[29]  Defendant Smith transmitted the records to the State of Alabama School Board through his personal e-mail account,[30] and defendant Matthews distributed them to media outlets.[31]  Additionally, defendant Matthews represented to the University's Public Safety Department that plaintiff was a marijuana trafficker who was convicted of driving under the influence of marijuana.[32]  Matthews knew these representations were false, but provided a copy of the altered records to the Public Safety Department, nevertheless.[33]

As a result of defendants' dissemination of the altered records, plaintiff incurred attorney's fees to appear before the University's Board of Trustees and rebut allegations that his guilty plea was related to the use of marijuana.[34]  Plaintiff's personal and professional reputation has been harmed by defendants' publication of the altered records.[35]

---

[29] Doc. no. 53 (Plaintiff's RICO Case Statement), at ECF 7.

[30] Doc. no. 3 (Amended Complaint) ¶ 33.

[31] *Id.* ¶ 34.

[32] *Id.* ¶ 35.

[33] *Id.*

[34] *Id.* ¶ 37.

[35] *Id.* ¶¶ 38, 46–47, 53.  Plaintiff does not allege that he actually lost his job as a result of defendants' actions, and plaintiff does not claim lost wages as an element of damages.

### D.     Plaintiff's RICO Case Statement

In addition to the facts asserted in his Amended Complaint, plaintiff also filed a RICO case statement, in an attempt to comply with the court's order to file a more definite statement in accordance with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which provides, in pertinent part that, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[36]  *See also Liquidation Commission of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1355 (11th Cir. 2008) ("When a RICO claim is based on predicate acts involving fraud, those predicate acts must be pleaded with particularity, in accordance with Fed. R. Civ. P. 9(b)." (citing *Ambrosia Coal & Construction Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007))).

In his RICO case statement, plaintiff reasserts the same facts summarized above, albeit with somewhat more factual specificity.  For example, in describing one email, plaintiff states:

> An email that appears to have been sent by Tony Smith was sent on February 28, 2011, at approximately 10:02 PM to numerous individuals with the subject matter "AAMU Management and Trustees need to be VACATED!"  Attached to this email were 4 PDF documents that, upon information and belief, were the altered records showing falsely that Kevin Rolle had been convicted of driving under the

---

[36] Doc. no. 53 (Plaintiff's RICO Case Statement); *see also* doc. no. 52 (Memorandum Opinion and Order), at 25.

influence of marijuana.[37]

Approximately five pages of plaintiff's RICO case statement contain further detailed descriptions of emails sent by one or more of the defendants that erroneously attributed plaintiff's guilty plea to driving under the influence of marijuana, rather than alcohol.[38]

While plaintiff admits that there was no criminal conviction for any of defendants' actions, he claims that the predicate act of disseminating the emails "pose[s] a threat of continued criminal activity inasmuch as, upon information and belief, one or more of the Defendants continues to publish known false information regarding Kevin Rolle."[39]

Finally, plaintiff makes broad, nonspecific conclusions in several places in his statement that defendants have profited from spreading false information about him:

> The defendants acted as individuals engaged in a common enterprise through electronic mail of publishing false information regarding the Plaintiff for their own financial benefit.

> Because each of the named Defendants had a long-standing relationship with the university, they enjoyed privileges and accommodations which resulted in their sustained financial gain. The Defendants apparently saw Dr. Rolle, and some other new members of the University's Administration, and his/their efforts to reform the

---

[37] *Id.* at ECF 7.

[38] *See id.* at ECF 4–8.

[39] *Id.* at ECF 8 (alteration supplied).

culture at the University, as a threat to their sustained financial gain.

. . . .

Upon information and belief, the purpose and goal of the enterprise is to perpetuate a system whereby each of the conspirators may enjoy and [*sic*] level of privilege and access at the University with [*sic*] leads to each conspirator's personal financial gain or access.

. . . .

The enterprise exists to publish false information regarding the Plaintiff for the financial benefit of the individual Defendants.[40]

Notably, however, plaintiff admits that he "does not currently have information regarding the benefit to the enterprise in attempting to have him fired from his position within Alabama A&M University."[41]  Plaintiff also does not claim that he was actually fired by the University.

## III.  DISCUSSION

### A.    Plaintiff's Motion to Alter or Amend

As an initial matter, the court will consider plaintiff's "Motion to Alter or Amend this Court's Order dismissing Plaintiff's claims against Defendant James Montgomery," in which plaintiff states that the motion is made "pursuant to Rule 60(b) of the Federal Rules of Civil Procedure."[42]

---

[40] *Id.* at ECF 9–11 (alterations supplied).

[41] *Id.* at ECF 11.

[42] Doc. no. 62 (Motion to Alter or Amend), at 1.

A motion to alter or amend a judgment should be made pursuant to Federal Rule of Civil Procedure 59(e), not Rule 60(b). *See* Fed. R. Civ. P. 59(e). Rule 59(e) states: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." *Id.* As plaintiff filed his motion on September 10, 2013 — 53 days after the court's July 19, 2013 order — the motion to alter or amend was not timely.

Nevertheless, the court treats a Rule 59(e) motion filed out of time as a motion for relief from judgment under Rule 60(b). *See, e.g.*, *Jones v. Southern Pan Services*, 450 F. App'x 860, 862 (11th Cir. 2012) ("An untimely Rule 59(e) motion is properly treated by the district court as a Rule 60(b) motion to vacate the judgment . . . ." (citing *Mahone v. Ray*, 326 F.3d 1176, 1177 n.1 (11th Cir. 2003))). So construed, the motion is not time-barred, because it was brought within a year of the court's order dismissing defendant James Montgomery. *See* Fed. R. Civ. P. 60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time — and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.").

Federal Rule of Civil Procedure 60(b) addresses the grounds upon which a court may accord relief from a final judgment or order. The rule reads as follows:

On motion and just terms, the court may relieve a party or its legal

13

representative from a final judgment, order, or proceeding for the following reasons:

> (1)   mistake, inadvertence, surprise, or excusable neglect;

> (2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

> (3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

> (4)   the judgment is void;

> (5)   the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

> (6)   any other reason that justifies relief.

Fed. R. Civ. P. 60(b).   To prevail on a Rule 60(b) motion, the movant "must demonstrate a justification so compelling that [the district court is] required to vacate its order." *Cano v. Baker*, 435 F.3d 1337, 1342 (11th Cir. 2006) (quoting *Cavaliere v. Allstate Insurance Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993)). A movant's burden on a Rule 60(b) motion is heavy. *See id.*

Plaintiff has failed to meet his burden in this case. Plaintiff does not cite any of the six enumerated grounds under which a party may seek relief from judgment under Rule 60(b) as the basis for his motion. Instead, he broadly states that, "[o]n July 26, 2013," following the court's dismissal of defendant James Montgomery,

14

"Plaintiff filed his RICO statement which provided details as to all of the Plaintiff's claims against Defendant James Montgomery in this matter."[43]  Plaintiff does not even assert an *argument* as to why the court should reconsider its July 19, 2013 order dismissing Montgomery from the action.  As the court noted in that order, "Plaintiff has already amended his complaint once, and he provides no reason why 'justice . . . requires' a third opportunity to properly state claims against Montgomery."[44]  The same reasoning applies with more force here.  Once again, plaintiff has presented no compelling reason (or, indeed, any reason at all) why the court should reconsider its order dismissing defendant James Montgomery with prejudice from this action.  Accordingly, plaintiff's motion is denied.

## B.    Defendants' Motions to Dismiss

All of the remaining defendants filed separate motions to dismiss.  Even so, the motions assert essentially the same argument:  *i.e.*, that plaintiff's revised RICO Case Statement merely restates the same general allegations that were deemed deficient in his Amended Complaint.[45]  Because plaintiff has failed to adequately state a claim

---

[43] *Id.* ¶ 4.

[44] Doc. no. 52 (Memorandum Opinion and Order), at 11 n.42 (quoting Fed. R. Civ. P. 15(a)(2)).

[45] *See* doc. no. 54 (Defendant, Tom Bell's, Motion to Dismiss) ¶ 3; doc. no. 59 ("Motion to Dismiss" filed by defendant Dorothy Houston) ¶ 6; doc. no. 61 (Defendant, Tony Smith's, Motion to Dismiss) ¶ 2; doc. no. 67 (Defendant, Kevin Matthews'. [*sic*] Motion to Dismiss) ¶ 3.

under RICO, the defendants' motions to dismiss are due to be granted.

### 1.    Legal standards for stating a fraud-based RICO claim

The section of RICO defining "prohibited activities" provides in relevant part

that:

> **(a)**  It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . .

> **(b)**  It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

> **(c)**  It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> **(d)**  It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962.  As thus phrased, RICO essentially is a criminal statute.  *See*

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 654 (S.D.N.Y. 1996)

(Sweet, J.) ("The RICO provisions of the Organized Crime Control Act of 1970 were enacted expressly, as set forth in the preamble to the Act, 'to seek the eradication of organized crime in the United States.' Pub. L. No. 91-452 (1970).").

The Act nevertheless provides civil penalties for private parties who have been injured "by reason of" a RICO violation.  18 U.S.C. § 1964(c).  As Senior Judge Robert W. Sweet of the United States District Court for the Southern District of New York aptly observed in his opinion in the *Katzman* case,

> "Civil RICO is an unusually potent weapon — the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991).  Because the "mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).

167 F.R.D. at 655 (alterations in original).  The four elements of a civil RICO action are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Durham v. Business Management Associates*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)).  The pivotal points of proof for civil plaintiffs, however, are demonstration of "a pattern" of "racketeering activity."  A "pattern" is established by "at least two" predicate acts of "racketeering activity" within a ten year period, 18 U.S.C. § 1961(5), and must either amount to or pose a threat of "*continuing* racketeering activity."  *See H.J., Inc. v.*

*Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989) (emphasis in original). The phrase "racketeering activity" is defined in section 1961(1)(B) as meaning, among other things, "any act which is indictable under" a specified list of federal criminal offenses, including wire fraud under 18 U.S.C. § 1343.[46]

The Eleventh Circuit has explained on multiple occasions that "mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1225 (11th Cir. 2002) (internal quotation marks omitted) (quoting *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir. 1991), *abrogated on other grounds by Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir. 2011)).

Where, as here, a civil RICO claim is based on predicate acts involving fraud, a plaintiff must plead the facts of the complaint with particularity, in order to comport with Rule 9(b). *Liquidation Commission of Banco Intercontinental*, 530 F.3d at

---

[46] The wire fraud statute, 18 U.S.C. § 1343, provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1343.

18

1355–56 (citing *Ambrosia Coal*, 482 F.3d at 1316–17).

> To satisfy the Rule 9(b) standard, RICO complaints must allege:  (1) the
> precise statements, documents, or misrepresentations made; (2) the time
> and place of and person responsible for the statement; (3) the content
> and manner in which the statements *misled the Plaintiffs*;[47] *and* (4)
> *what the Defendants gained by the alleged fraud.*

*Ambrosia Coal*, 482 F.3d at 1316–17 (emphasis and footnote supplied) (citing *Brooks*

*v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380–81 (11th Cir.

1999)).  A plaintiff cannot "lump[] together all of the defendants in their allegations

of fraud," but must instead make "specific allegations with respect to each

defendant."  *Id.* at 1317 (alteration supplied).

### 2.    Application of the legal standards to defendants' actions

Plaintiff has failed to allege with specificity what the defendants gained, or

stood to gain (if anything), by the alleged fraud.  Plaintiff's broad, conclusory

allegations that defendants financially gained from painting him in a false light,

without any more detail, cannot possibly satisfy the heightened pleading standard of

---

[47] In *Bridge v. Phoenix Bond and Indemnity Co.*, 553 U.S. 639 (2008), the Supreme Court held that "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations."  553 U.S. at 661.  Plaintiff argues that the *Bridge* decision has altered the Eleventh Circuit's pleading requirements, and that plaintiff need not plead that he himself was misled, only that he was injured by defendants' misrepresentations.  *See, e.g.*, doc. no. 60 (Response to the Second Motion to Dismiss Filed by Tom Bell) ¶¶ 24–26.  Regardless of plaintiff's interpretation of the *Bridge* decision, however, the decision itself clearly does not implicate the fourth *Ambrosia Coal* requirement:  *i.e.*, that the plaintiff must allege that the defendants gained something by the alleged fraud.

Rule 9(b).  Indeed, plaintiff expressly admitted that he "does not currently have information regarding the benefit to the enterprise in attempting to have him fired from his position from Alabama A&M University."[48]  Thus, plaintiff has failed to comport with the fourth element of the *Ambrosia Coal* pleading requirements, and his complaint is due to be dismissed on those grounds.[49]

In addition, however, even if plaintiff had pled the "benefit to the enterprise" with more specificity, defendants' actions, as alleged by plaintiff, cannot possibly constitute wire fraud under 18 U.S.C. § 1343.  Plaintiff does not allege that any of the defendants have attempted to defraud anyone (plaintiff or otherwise) of money or property.  Indeed, other than plaintiff's vague assertions that he was a "threat to [defendants'] sustained financial gain," plaintiff has failed to plead that defendants' actions implicated money or property whatsoever.[50]

Further, plaintiff has failed to demonstrate that defendants' actions pose a threat of continuing racketeering activity.  Even if the court were to construe the

---

[48] *Id.* at ECF 11.

[49] Subsequent to its *Ambrosia Coal* decision, the Eleventh Circuit noted in *United States v. Williams*, 527 F.3d 1235 (11th Cir. 2008), that, in the context of criminal wire fraud prosecution, "[w]ire fraud does not require the government to prove actual financial loss or that the defendant benefitted from her scheme." *Id.* at 1245.  *Williams* does not affect the pleading standard for civil RICO actions alleging wire fraud, or otherwise affect the *Ambrosia Coal* standard, however. *See, e.g.*, *Merritt v. Lake Jovita Homeowner's Association, Inc.*, 358 Fed. App'x 47, 49 (11th Cir. 2009) (quoting *Ambrosia Coal* as the applicable standard for the level of specificity required in a civil RICO pleading alleging mail or wire fraud).

[50] Doc. no. 53 (Plaintiff's RICO Case Statement), at ECF 9 (alteration supplied).

definition of "racketeering activity" so broadly as to encompass the sending of defamatory emails, the Eleventh Circuit has definitively held that, "where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering . . . ." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1267 (11th Cir. 2004) (alteration supplied) (holding that multiple predicate acts failed to state a claim under RICO where the predicate acts were in furtherance of a singular scheme with a singular goal, because they failed to allege a pattern of continuity).

In sum, Count I of plaintiff's claim is due to be dismissed, not only because plaintiff has failed to comport with the pleading requirements of Rule 9(a), but also because defendants' actions, even if pled with specificity, cannot possibly constitute a civil RICO violation under 18 U.S.C. § 1962.[51]

## C.  Plaintiff's Supplemental State Law Claims

As the dismissal of plaintiff's civil RICO claim will leave this court with no independent jurisdictional foundation for plaintiff's supplemental state law claims,

---

[51] In addition to the reasons stated above, all of the emails at issue appear to have been exchanged among recipients within the State of Alabama.  It is not at all clear to the court that entirely *intrastate* email communications are "communication[s] in interstate or foreign commerce," as required by 18 U.S.C. § 1343.  *See United States v. Philips*, 376 F. Supp. 2d 6, 8 (D. Mass. 2005) (holding that a wire transmission must itself cross state lines, and not merely "use a mechanism of interstate commerce," in order to implicate 18 U.S.C. § 1343).  As the issue has not been addressed in the Eleventh Circuit, however, and because plaintiff's complaint is due to be dismissed on other grounds, the court will decline to rule on the matter.

the court declines to assume jurisdiction over those claims.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."); *see also L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984) ("[I]f the federal claims are dismissed prior to trial, [*United Mine Workers* v.] *Gibbs*[, 383 U.S. 715, 726 (1966)] strongly encourages or even requires dismissal of state claims." (alterations supplied) (citing *Gibbs*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."))).  Accordingly, those claims will be dismissed, but without prejudice, so that plaintiff may have the opportunity to pursue those claims in the appropriate state forum.

## IV.  CONCLUSION

In accordance with the foregoing, the motions to dismiss filed by Defendants Bell, Houston, Smith, and Matthews are GRANTED.  Count I of plaintiff's complaint

is DISMISSED with prejudice.  Counts II through VI of plaintiff's complaint are likewise DISMISSED, but without prejudice, so that plaintiff may pursue those claims  in an appropriate state court action.  Plaintiff's Motion to Alter or Amend is DENIED, and his Motion to Strike is DENIED as moot.  Defendant Bell and former Defendant James Montgomery's Joint Motion to Compel Plaintiff's Deposition is likewise DENIED as moot.  The Clerk is directed to close this file.

DONE and ORDERED this 28th day of March, 2014.

_____
United States District Judge